**DRUMMOND et al. v. SMITH et al.**
**SAME v. SAME.**

Nos. 27967, 27968. April 4, 1939.

Rehearing Denied July 11, 1939.

Second Petition for Rehearing Denied Nov. 7, 1939.

Chas. R. Gray, W. N. Palmer, and Wardlaw & Wardlaw, for plaintiffs in error.

H. P. White, R. A. Barney, Charles Hill Johns, and Harold Thweatt, for defendants in error.

Miley, Hoffman, Williams, France & Johnson, for defendant in error A. L. Jeffrey.

RILEY, J. On June 11, 1937, Alfred A. Drummond commenced an action in the district court of Osage county, Okla., against George W. Smith, J. B. Smith, and Stockyards Loan Company. The general nature of the action was to establish a limited partnership between plaintiff and defendant George W. Smith, and an accounting of alleged partnership affairs, and to establish and have decreed a trust in certain real and personal property held in the name of George W. Smith and J. B. Smith, and also claiming an interest in about 1,000 head of cattle alleged to have been held in the name of J. K. Simms. Other matters were involved which will be more particularly noted in connection with the amended petition upon which the case was tried.

The Stockyards Loan Company filed an answer and intervening petition.

The National Livestock Credit Corporation filed an interplea and amended interplea claiming a lien on certain personal property claimed by Drummond as partnership property.

On August 5, 1937, Alfred A. Drummond dismissed as to Stockyards Loan Company, and on the same day Stockyards Loan Company withdrew its answer and dismissed as to its interplea.

September 4, 1935, plaintiff Drummond filed an amended petition, having obtained leave to make Wayland Smith and Tom Jeff Smith and Madeline Drummond parties defendant.

The matters involved are complicated, but in substance plaintiff's amended petition, and a later amendment to the amended petition, alleged that, in 1924, and prior thereto, plaintiff was the owner and operator of a large ranch in Osage county; that, in 1924, he entered into an oral limited partnership with defendant George W. Smith, whereby George W. Smith became the ranch foreman for plaintiff at a salary of $75 per month, and in addition thereto allowed said George W. Smith an interest in small bunches of cattle and other livestock, which relation continued until 1932; that about January 1, 1927, plaintiff and defendant George W. Smith entered into an agreement whereby the hog business on the ranch should thereafter be conducted as a partnership business, the breeding stock, consisting of about 40 brood sows, then on the ranch, and thereafter to be kept, remained the property of plaintiff, the hogs to be charged with the cost of their feed. Meat for the run of the ranch to be furnished, and the hogs to be cared for without other expense to plaintiff; that about January 1, 1928, a further agreement was entered into between plaintiff and defendant, whereby certain road dragging contracts theretofore handled by plaintiff should thereafter be conducted as a partnership; cost of use of teams, hire of men, and feed for teams and men should first be deducted, and remaining proceeds from such contracts to be equally divided between plaintiff and defendant George W. Smith; that at first the partnership affairs were usually conducted in the name of Alfred A. Drummond, but from 1925 to 1932, occasional deals were carried in the name of Smith & Drummond, or of George W. Smith; that, in 1932, the method of doing business and the name in which it was carried on was changed to Geo. W. Smith, which continued to the date of filing of this action; that prior to February, 1932, plaintiff had purchased 681.3 acres of land, taking title in the name of Geo. W. Smith, and title was later conveyed to plaintiff by Geo. W. Smith and wife. That about February, 1932, the Stockyards Loan Company of Kansas City was carrying a loan in

the name of A. A. Drummond, secured by a mortgage on about 1,096 cows and calves belonging to the partnership of Alfred A. Drummond and Geo. W. Smith; that the Stockyards Loan Company required that said loan be liquidated, and, in order so to do, the partnership of Drummond and Smith negotiated a loan on said cattle with the National Livestock Credit Corporation of Oklahoma City, in the name of Geo. W. Smith, for about one-half enough to pay the loan of the Stockyards Loan Company; that, in order to secure said loan, it was necessary to transfer legal title to said cattle to George W. Smith, which was done by bill of sale: that it was also necessary, in order to obtain said loan and a further line of credit in handling said business in the name of Geo. W. Smith, and make a showing to the National Livestock Credit Association, that Smith had ample pasturage facilities, etc., to care for said cattle, and, in order so to do, that plaintiff conveyed the legal title of 2,130.31 acres of land in Osage county to said Geo. W. Smith. That thereafter, though legal title to said cows and calves and said land was in Geo. W. Smith, the cows and calves actually remained the partnership property of A. A. Drummond and Geo. W. Smith, and the equitable title to said land remained in Alfred A. Drummond, the transfer of said property to said Geo. W. Smith being for the sole purpose of establishing a line of credit in the name of Geo. W. Smith, so as to obtain said loan; that the value of said land was agreed to be approximately $68,608, and that it was further agreed that the partnership might take full title to said land by paying said sum, but said sum had never been paid, and the equitable title was still in Alfred A. Drummond; that thereafter, in December, 1936, plaintiff sold approximately 1,950 acres of the land so held by Smith to Chapman and Barnard, and caused the same to be conveyed to them by Smith; that in the deal with Chapman and Barnard, they were to convey 160.3 acres of other land to Drummond, but title was in fact taken in the name of Smith, which land also really belonged to plaintiff, and was held under the same general arrangement for sustaining the credit of the partnership then being conducted in the name of Geo. W. Smith; that as a substitute for the land conveyed to Chapman and Barnard, plaintiff Drummond about the same time conveyed 1,557 acres of other land to defendant Geo. W. Smith; that this last

conveyance as well as that of the 160.3 acres was for the sole purpose of sustaining the credit of Geo. W. Smith, in order to conduct the partnership business in Smith's name, and that plaintiff was at all times the true owner thereof; that defendant Smith, without right and without the consent of plaintiff, had conveyed to a third party an undivided one-half interest in 240 acres of said land, for which he should be held to account to plaintiff; that in 1934 and 1935, defendant Geo. W. Smith had acquired title in his own name to about 680 acres of other land which he paid for with funds and assets belonging to the partnership, which land in fact belonged to the partnership of Drummond and Smith. It was further alleged that about October 11, 1932, plaintiff executed a lease on approximately 4,600 acres of other land to said defendant, Geo. W. Smith, for grazing and ranch purposes, said lease to run for ten years; that said lease was in fact made for the sole and only purpose of enabling Smith to carry on the ranch partnership business so as to enable him to make contracts with cattle owners for grazing cattle, for the benefit of plaintiff, it being understood that the partnership cattle owned by plaintiff and defendant Geo. W. Smith should be grazed or pastured thereon at the usual and customary rates, and which the partnership would pay to plaintiff; then it was alleged that it was subsequently agreed that said lease was to be of no force or effect. It was further alleged that on or about October 11th, Madeline R. Drummond executed a similar lease to defendant Geo. W. Smith covering about 900 acres of other land; that said lease was likewise not made for the benefit of said defendant Geo. W. Smith individually; that in truth and in fact said lease had been canceled by other agreement and by mutual consent. In this connection plaintiff asked that defendant Madeline R. Drummond be required to appear and set up any claim she might have against the partnership of Smith and Drummond on account of said lease.

It was then alleged that the partnership affairs between plaintiff and Geo. W. Smith were, for the most part, conducted in the name of plaintiff down to about October, 1932, at which time it was agreed that thereafter Smith should, and did, become the managing partner, and the partnership affairs were handled by and conducted in Smith's name, and in February, 1933, it

was further agreed that defendant was to become, and did become, a partner with plaintiff in the ranch business on the ranch known as the Kyger Ranch, plaintiff to be paid the prevailing and customary rental price for the use of his land, the price to be agreed upon the first of April each year.

It was then alleged in substance that growing out of the partnership affairs, and "deals" down to about October, 1932, the partnership of Smith and Drummond had become and was indebted to the plaintiff in the approximate sum of $80,000, and since that time plaintiff had advanced to the partnership in money, assets, feed, cattle and other things in the approximate sum of $32,000; that in addition thereto defendant Smith had, while working on a salary, overdrawn his salary account about $2,028.64, and further that plaintiff had loaned defendant some $450, and paid other notes for him, and at his request, on account of which defendant Geo. W. Smith was indebted to plaintiff $1,185.01. It was then alleged that defendant Geo. W. Smith had and held in his name leases on a number of tracts of land not owned by, but used in connection and comprising, with the lands owned, the Drummond Kyger Ranch, all of which leases were obtained for and paid for with partnership funds, and were therefore the property of said partnership; that there were then in force various grazing contracts with sundry persons, owners of cattle being run on said ranch, which contracts were standing in the name of defendant Geo. W. Smith, but which in fact belonged to and were a part of the assets of the partnership of Smith and Drummond. It was then alleged that defendant Geo. W. Smith held in his name 35 shares of capital stock of the National Livestock Credit Association, and a note for about $12,000, signed by Ed Smith and Geo. Smith by Ed Smith, all of which belonged to and was a part of the assets of the partnership of Smith and Drummond.

It was then alleged that a large sum of money was collected by defendant Smith out of the hog business, and in conjunction with J. B. Smith and Wayland Smith, the amount of which plaintiff is unable to state, but which belonged to said partnership of Smith and Drummond.

It was then alleged that in 1934, defendant Geo. W. Smith had purchased with funds of the partnership of Smith and Drummond about 101 head of cattle and taken title thereto in the name of J. B. Smith and Wayland Smith, which said cattle or the proceeds thereof, if same had been sold, belonged to said partnership of Smith and Drummond, and that other cattle had been purchased in the same way and title taken in the name of J. B. Smith, Wayland Smith, and/or Tom Jeff Smith.

Plaintiff further alleged that other personal property, consisting of horses, mules, etc., were on said ranch which belonged to said partnership, and that defendant Geo. W. Smith had collected about $650 insurance on hay which had been burned and which belonged to said partnership of Smith and Drummond which he had not accounted for.

It was then alleged that the partnership of Smith and Drummond was the owner of an undivided one-half interest in the stock and equipment and lease of a ranch known as the Stuart ranch, which stood in the name of Geo. W. Smith and Ed Smith, and was the owner of about 1,000 head of cattle held in the name of Jim Simms.

Plaintiff prayed for an accounting as against defendant Geo. W. Smith, and for judgment, and that he be declared to be the owner of all the lands mentioned and described as being held in the name of Geo. W. Smith, and for an accounting for the alleged partnership interest of the alleged partnership of Smith and Drummond, the property held in the names of defendants J. B. Smith, Wayland Smith, Tom Jeff Smith, Ed Smith and Jim Simms, and for the alleged money due said alleged partnership of Smith and Drummond from all of said defendants, for the cancellation of the ten-year lease on the land owned by plaintiff, and for general equitable relief.

Defendant Geo. W. Smith filed a separate, verified answer and cross-petition, wherein he denied generally all the allegations of plaintiff's petition, and specifically denied that he ever entered into a limited, special, general, or any other partnership with plaintiff.

He then alleged that he did, under an oral agreement with plaintiff, begin working for plaintiff in 1924, as foreman of the ranch, with the further oral agreement that plaintiff would from time to time carry him (Smith) for an interest in "herds or bunches" of cattle, he, Smith, to care for and look after such cattle and receive one-

half of the profits, and that from time to time under such agreement, a number of separate herds of cattle were handled by plaintiff and defendant Geo. W. Smith; that plaintiff "financed" the several deals, bought and sold each separate herd, without accounting to defendant Geo. W. Smith for his part of the profits; that this continued from time to time until about February, 1932, at which time plaintiff had become and was indebted to defendant Geo. W. Smith in the sum of about $25,000; that all the books, records, etc., concerning said "deals" were kept by plaintiff, and that down to February 19, 1932, no settlement had been had between said parties as to the accumulated profits; that with reference to said transaction, each separate herd or group of cattle handled was a separate and independent transaction between plaintiff and defendant Geo. W. Smith, called a "deal," arranged between said parties separately and independent of each other. That in February, 1932, after repeated requests by defendant Geo. W. Smith for a settlement, and at which time plaintiff was indebted to him in the approximate sum of $25,000, defendant Geo. W. Smith was told by plaintiff that he, plaintiff, did not have the money with which to pay said indebtedness, whereupon it was orally agreed between plaintiff and defendant Geo. W. Smith that plaintiff would convey or deed to defendant Geo. W. Smith about 2,000 acres of land, which he, Smith, was to hold until such time as plaintiff and defendant Geo. W. Smith should have a full and complete final settlement of their accounts and full payment was made by plaintiff to defendant Smith; that in the event no final settlement was held, then title to said land should remain in and be the sole property of defendant Geo. W. Smith; that pursuant to said oral agreement, plaintiff did on February 19, 1932, by warranty deed, convey to defendant Geo. W. Smith about 2,000 acres of land in Osage county. (This land appears to be the same as that mentioned in plaintiff's petition as being 2,130.-31 acres.)

Defendant then alleged that thereafter in the summer or fall of 1932, plaintiff elected to and did quit the cattle business and go into other business, and sold his remaining cattle to defendant Geo. W. Smith, and leased him his remaining land. (This appears to be the same lease which is mentioned in plaintiff's petition.)

It is then alleged that in connection with and as a result of plaintiff decid-ing to quit the cattle business, defendant Madeline Drummond leased her land to him, Smith, under written lease. (This appears to be the same lease which plaintiff contends was executed to Geo. W. Smith for the benefit of the alleged partnership of Smith and Drummond.)

Defendant Geo. W. Smith then pleaded in substance the transaction concerning the sale of a part of the land covered by the first deed from plaintiff to defendant Smith to Chapman and Barnard, except he alleged that said transaction was wholly for the benefit of plaintiff. He then alleged that in connection with the Chapman-Barnard transaction, plaintiff and defendant Geo. W. Smith, on or about December 6, 1932, had a full, complete lump-sum settlement and accounting of each and every transaction between them up to that date; that on said date said settlement was fully consummated in the office of C. B. Stuart at Oklahoma City, whereunder plaintiff conveyed to said defendant Geo. W. Smith 1,000 acres of land in Osage county, and gave defendant Geo. W. Smith a bill of sale conveying all of plaintiff's right, title, and interest in and to all the ranch equipment, including cows, horses, work mules, all harness, saddles, etc., which, together with about $2,155.06, received by defendant Geo. W. Smith out of the sale of the land to Chapman and Barnard, comprised and was a full and complete and final settlement between plaintiff and defendant Geo. W. Smith, whereby the land and personal property so conveyed to him (Geo. W. Smith) became and was thereafter the sole property of said defendant Geo. W. Smith.

As to the small notes and other items mentioned in plaintiff's petition, defendant Geo. W. Smith pleaded as to some the statute of limitations, and as to others that the obligations mentioned were in fact obligations of plaintiff, or that he, plaintiff, had assumed payment thereof as a part of said alleged final settlement.

As to the ten-year leases, defendant Geo. W. Smith alleged, in substance, that they were bona fide leases, and further that plaintiff and defendant Madeline R. Drummond had both received and accepted rental under said leases and were estopped from denying the validity thereof.

Defendant Madeline R. Drummond filed her separate answer, wherein she admitted the execution of the lease to Geo. W. Smith covering some 9,243 acres of land owned

by her, but alleged in substance that said lease was in fact made and executed in order to enable plaintiff and defendant Geo. W. Smith to carry on their partnership business in the name of defendant Geo. W. Smith; that she executed said lease upon the representation of Geo. W. Smith that if she would execute said lease in the form it was executed, it would enable said partnership of Smith and Drummond to procure, in the name of Geo. W. Smith, advantageous contracts to pasture or graze cattle for other people in addition to the cattle owned and handled by the partnership, and that instead of the 50 cents per acre stated in the lease, she would be paid the highest rental obtainable for grazing purposes; that she had owned said land from and after February 24, 1932, and that for a time prior to the execution of said lease said partnership of Smith and Drummond had grazed her said land together with some 9,000 acres owned by other people upon which she had a lease, and she had not been paid therefor.

She also alleged certain breaches of the contract between her and said Geo. W. Smith, managing partner of the partnership of Smith and Drummond, and sought an accounting from said partnership, and the cancellation of said lease. The other defendants, J. B. Smith, Wayland Smith, Tom Jeff Smith, and Jim Simms, filed answers denying generally the allegations of plaintiff's petition as to them, and denied specifically that they were in any way indebted to plaintiff or to the alleged partnership of Smith and Drummond.

Lee L. Russell, by leave of court, filed a plea in intervention, wherein he alleged in substance that in the early part of 1933, the partnership, Robert Stuart, Ed Smith, and Lee Russell, a partnership known as the Smith Cattle Company, was operating the ranch known as the Stuart Ranch, and that the partnership of Smith and Drummond was pasturing cattle on said Stuart Ranch; that in the late spring of 1933, by oral agreement between Alfred A. Drummond, Geo. W. Smith, and Lee L. Russell, a partnership consisting of the four, was formed to purchase the cattle owned by the Smith Cattle Company, then being pastured on the Stuart Ranch, and the cattle then owned by said Smith and Drummond, then being pastured on the Stuart Ranch.; that said "four-way" partnership did purchase the cattle of the Smith Cattle Company, and the cattle owned by Smith and Drummond then being pastured

on the Stuart Ranch; that Ed Smith was to be the foreman of said Stuart Ranch at an agreed salary; that Smith and Drummond were to secure finances to purchase cattle for the operation of said ranch and Lee L. Russell was to secure cattle for pasture on the unstocked portion of said ranch and assist in marketing the cattle, and that each of the four partners was to share equally in the profits and losses of said business; that said "four-way" partnership obtained a three-year lease on the land comprising the Stuart Ranch, and during 1933, 1934, and 1935, cattle were purchased and sold by said partnership and various pasturage contracts were made with owners of cattle; that said Lee L. Russell carried out his part of said agreement; that during said time cattle were bought and sold by said partnership and cattle were pastured for other people, and all the proceeds were collected and retained by said Geo. W. Smith and Ed Smith; that there were then a large number of cattle belonging to said partnership then on said Stuart Ranch in which intervener claims an interest, but that said partnership had been repudiated by said defendants Geo. W. Smith and Ed Smith. He prayed an accounting.

Geo. W. Smith and Ed Smith answered said plea of intervention of Lee L. Russell by general and specific denial.

Defendant Jim K. Simms answered by general and special denial of any interest of plaintiff in any cattle then held by said Jim K. Simms, and by special plea of settlement of any interest of plaintiff in any cattle which had theretofore been handled by said J. K. Simms.

With the issues thus complicated, plaintiff, on January 8, 1936, filed a supplemental petition, wherein A. L. Jeffrey was made a party defendant.

In this supplemental petition he alleged, in substance, that on June 27, 1935, an order was entered enjoining defendant Geo. W. Smith from selling or disposing of any of the alleged partnership property mentioned in plaintiff's petition, among which was the 55 shares of stock in the National Livestock Credit Corporation; that there had been an indebtedness against said stock in favor of the National Livestock Credit Corporation for which said stock was security; that on or about February 4, 1935, plaintiff had been notified to pay said note, and that the corporation was about to sell or had sold said note to H. H. Mundy; that

plaintiff and defendant Geo. W. Smith took up said note by paying the indebtedness against said stock out of partnership funds, and that said note was delivered to defendant Geo. W. Smith; that thereafter the partnership needed said money to carry on its business, whereupon it was agreed that plaintiff should give Smith a note for $3,500, secured by said stock, in order that Smith might use said note and stock as collateral for a further loan for the partnership from the National Livestock Credit Corporation; that said note and stock were so pledged, but thereafter, on or about December 12, 1935, the indebtedness of the partnership of Smith and Drummond to the National Livestock Credit Corporation had been so reduced that the note and stock were returned to defendant Geo. W. Smith; that there was then nothing due or owing to the partnership on said note; that defendant Smith had endorsed said note and delivered same with said stock to defendant A. L. Jeffrey, who was about to sell said stock to satisfy said note; that said note was past due when delivered to defendant Jeffrey, and that he, Jeffrey, well knew of the litigation between plaintiff and defendant Geo. W. Smith, and well knew that said stock was claimed as a part of the assets of said partnership or of plaintiff.

Plaintiff prayed for a temporary injunction enjoining Jeffrey from selling said stock; that plaintiff had a good and valid defense to said note.

Defendant Jeffrey answered the supplemental petition. A hearing was had and an injunction was denied.

On September 27, 1935, Stockyards Loan Company commenced an action in the district court of Osage county to recover judgment against Alfred A. Drummond on five promissory notes, amounting in all to about $95,000, accrued interest, and an attorney's fee of $8,430, and to foreclose a mortgage given to secure said notes covering some 5,200 acres of land located in Osage county, Okla. Some 1,500 acres of said land was included in the land deeded to Madeline R. Drummond, mentioned in the suit of Drummond v. Smith et al.

It was alleged that the reasonable value of the land covered by the mortgage was not to exceed $52,000. George W. Smith, Madeline R. Drummond, J. B. Smith, Wayland Smith, Tom Jeff Smith, and others were made parties defendant. The petition contained in substance the same allegations of partnership between Alfred A. Drummond and Geo. W. Smith as were contained in the pleadings in the case of Drummond v. Smith et al., and alleged that much of the land deeded by Drummond to Smith was conveyed without consideration, and for the purpose of enabling Smith and Drummond to carry on the partnership business of Smith and Drummond and to that end obtain credit and borrow money for the said partnership. It also alleged that a large part of the money loaned by Stockyards Loan Company to Alfred A. Drummond was in fact loaned for and used by said partnership. It was then alleged that defendant Geo. W. Smith became personally indebted to the Stockyards Loan Company as a member of said partnership, and that said partnership likewise became indebted to plaintiff loan company, and liable for the payment of said notes.

Judgment was prayed against defendant Alfred A. Drummond for said principal sum, interest, and attorney's fee, the foreclosure of said mortgage; that the court find and determine a copartnership between Alfred A. Drummond and Geo. W. Smith, render an accounting of such copartnership; determine the amount of indebtedness of defendant Geo. W. Smith to said copartnership, and of such partnership to plaintiff, and for a settlement and liquidation of its partnership affairs, and for general equitable relief.

Alfred A. Drummond answered, admitting the execution of the notes and mortgage, and for the most part his liability thereon. He also admitted in substance the allegations of the petition with reference to the alleged partnership between himself and Geo. W. Smith.

He alleged that a large portion of the indebtedness to the Stockyards Loan Company was the indebtedness of the alleged copartnership of Alfred A. Drummond and Geo. W. Smith.

Geo. W. Smith and J. B. Smith answered denying generally and specifically the alleged partnership, and all the allegations of the petition going to the alleged transfer of land and other property to Geo. W. Smith without consideration, and as being for the sole benefit of the alleged partnership of Smith and Drummond.

Other minor issues were joined in this case as in the case of Drummond v. Smith.

On January 27, 1936, the Stockyards Loan Company filed a motion to consolidate its

case with that of Drummond v. Smith. This motion was denied, but later, on March 3, 1936, the court of its own motion set aside the order denying consolidation, and entered an order consolidating the two cases. To this order defendants Geo. W. Smith, J. B. Smith, and Wayland Smith objected and excepted. The same defendants, joined by H. R. White, guardian ad litem for defendant Tom Jeff Smith, filed a written petition and demand for a jury trial. This demand was denied and said defendants excepted.

The consolidated cases were then tried to the court without a jury. There was but little dispute as to the debt due the Stockyards Loan Company, except as to certain indebtedness which it was claimed, on the one hand and denied on the other, was indebtedness for which both Alfred A. Drummond and Geo. W. Smith were liable on account of the claim of the existence of a partnership between Smith and Drummond.

As between Alfred A. Drummond and Geo. W. Smith, the cause was tried under the pleadings on the issue of a partnership between them, or at least certain partnership or joint adventure transactions, and upon the theory that an accounting. was necessary. This brought in a number of side issues such as alleged transactions between A. A. Drummond and Geo. W. Smith and J. B. Smith, Wayland Smith, Tom Jeff Smith, Ed Smith and J. K. Simms.

The trial consumed some four weeks' time, and more than 5,000 pages of evidence was introduced.

The trial court, after the close of all the evidence, rendered judgment generally in favor of defendant George W. Smith, J. B. Smith, Wayland Smith, Tom Jeff Smith, Ed Smith, J. K. Simms, and A. L. Jeffrey, and against plaintiff, Alfred A. Drummond, and intervener Lee L. Russell.

The trial court, among other findings of fact, said: "I find that there has not been a general partnership between the plaintiff Drummond and the defendant Smith."

The court did find that:

"Unquestionably from within a short time after the defendant Smith was employed by the plaintiff Drummond as his ranch foreman the parties hereto were jointly interested in a number of cattle transactions. They were also interested in what has been referred to as hog deals. And they were also' jointly interested in what has been set up as the road contract venture."

An accounting was denied, based apparently upon the finding that there had been no general partnership, and a further finding as follows:

"Unquestionably, the plaintiff Drummond and the defendant Smith realized, in a general way, the status of their various business transactions, and the fact of their inability to arrive at an accurate settlement of their various business transactions. And with this in mind I find that on the 6th day of December, 1932, the plaintiff Drummond and the defendant Smith settled between themselves their various business transactions up to that date, and as a part of the considerations for the said settlement the plaintiff Drummond made, executed and delivered to the defendant Smith a warranty deed to various parcels of land located in the Kyger pasture, which deed was recorded on the 7th day of December, 1932, in book 74, at page 99.

"I further find that at the same time and upon the same occasion, as a further evidence of their settlement of their various business transactions, that the plaintiff Drummond duly executed and delivered a bill of sale, the consideration therefor being $3,000, upon all the ranch equipment, a Ford car and various other personal property located upon the Kyger ranch."

Alfred A. Drummond filed a motion to modify the judgment in certain respects and also filed a motion for a new trial.

Lee L. Russell filed a like motion, Stockyards Loan Company also filed a motion to modify the judgment theretofore entered.

On December 22, 1936, the findings and judgment theretofore made and entered were modified as to the Stockyards Loan Company, as follows:

"With reference to the judgment and findings heretofore entered concerning the Stockyards Loan Company, the court finds that Alfred A. Drummond and George W. Smith, upon various dates, borrowed from the Stockyards Loan Company, the sum of $76,766.70, for the purpose of purchasing 428 head of Circle Dot Cattle, 70 head of Corder heifers, 912 head of Jones steers and 403 head of Mahon steers, and for the purpose of paying the pasture bills on 403 head of Mahon steers. The court further finds that upon said indebtedness there has been repaid the total sum of $57,235.07, leaving a balance due on December 31, 1935, of $19,531.63, upon which there was due at said time interest in the total sum of $10,664.82; and the court further finds that the balance in the sum of $19,531.63, as principal should continue to draw interest at the rate of seven per cent. per annum until paid. The court further finds that in-

asmuch as the loans referred to in this finding were made by the Stockyards Loan Company for the benefit of George W. Smith and A. A. Drummond with the knowledge and consent of said George W. Smith, that said George W. Smith is liable for the payment of said sums; and the judgment heretofore entered on the 20th day of April, 1936, is modified to the extent of rendering a judgment against George W. Smith and A. A. Drummond in accordance with the finding herein. The court further holds that since said judgment of April 20, 1936, is modified in accordance with the above finding, that George W. Smith would be and is entitled to his statutory time for filing motion for new trial with reference thereto."

The motions of Alfred A. Drummond and Lee L. Russell to modify the judgment, and for new trial were overruled and Alfred A. Drummond and Lee L. Russell appeal. After the appeal was perfected, Jim K. Simms died and the cause as to his interest was revived in the name of Morris Simms, administrator.

Defendant Geo. W. Smith later filed a motion for new trial which was overruled, and he filed a separate appeal, which is not considered in this case.

The petition in error is a joint petition by Alfred A. Drummond and Lee L. Russell, and as originally filed the assignments of error were joint assignments.

Motion to dismiss the appeal was filed upon the ground that the assignments of error, being joint assignments and not being good as to both plaintiffs in error, could not be considered as separate assignments.

Leave to amend the petition in error as to the alleged defect was granted and the petition in error was amended, and motion to dismiss was overruled.

It is urged that the amendment as made is not sufficient to cure the alleged defect, and though it be sufficient, the amendment, being made after the expiration of the time allowed to file the petition in error, was one of substance rather than form, and therefore not permissible under the law.

It is settled that a petition in error may be amended after the expiration of the time for filing an appeal where the amendment is one of form and not of substance. Bruner v. Nordmeyer, 48 Okla. 415, 150 P. 159.

We consider the amendment here involved as one of form rather than substance, and adhere to the order heretofore made denying the motion to dismiss.

It is contended that finding of the trial court to the effect that there was a full and complete settlement between Alfred A. Drummond and Geo. W. Smith as to their business affairs on or about December 6, 1932, and that all the land and other property conveyed to Smith by Drummond at that time became and was thereafter the absolute property of defendant Geo. W. Smith, and the finding that there had been no copartnership between Alfred A. Drummond and Geo. W. Smith, are against the clear weight of the evidence and are not supported by the evidence.

If it be held that these findings are supported by the evidence, and are to be sustained, it follows that the trial court was correct in denying an accounting as between plaintiff in error, Alfred A. Drummond, and defendant Geo. W. Smith, and all of the evidence as to the various transactions between said parties relative to the so-called partnership or joint adventure transactions is not to be considered, and the judgment should be affirmed.

But if these findings cannot be sustained, then an accounting should be had, and the judgment must be reversed. It becomes necessary to first consider all the evidence going to the question of the alleged settlement agreement. In order that this evidence may be properly considered it is necessary to review briefly the situation leading up to the alleged settlement. It is conceded that Drummond and Smith commenced their operations about November, 1924. At that time Smith's property consisted of an equity in about 60 acres of land in Garvin county of the value of about $2,500. Drummond owned some 20,000 acres of land in Osage county and several thousand head of cattle.

Drummond contends that there were some 20 or more "partnership" deals between the two; that some resulted in net profits and others in great losses. Smith admits participation in a number of the "deals," and claims profits resulted therefrom in excess of $50,000, so that down to 1932, Drummond was indebted to him something more than $25,000. He denies participation in most if not all the so-called deals in which losses were sustained, so that he claimed Drummond then owed him in excess of $25,000.

Drummond contends that because of the losses sustained in several of the "deals" Smith was indebted to him, or to the partnership, in a sum far in excess of $25,000.

During the year 1932, Drummond had become indebted in large sums of money, not only to the Stockyards Loan Company, but to many other creditors, and was being pressed on all sides for payment.

There is nothing, however, except the statement of Smith himself tending to show that Drummond admitted any indebtedness to Geo. W. Smith. Drummond's indebtedness at the beginning of the year 1932 was in excess of $100,000. Some of this indebtedness was probably incurred in transactions other than the ranch and cattle business. But, concededly, he, or he and Smith together, was indebted to the Stockyards Loan Company in excess of $75,000, growing out of the ranch and cattle transactions. Geo. W. Smith, although he claimed that he had never been paid any of his share of the profits growing out of the "deals," had in some way acquired title to several hundred acres of land in Osage county near the ranch lands, aside from the 2,000 or 2,100 acres conveyed to him by Drummond in February, 1932.

Stockyards Loan Company was pressing for payment. The only way Drummond could raise money was by the sale of a part of his land. No purchaser could be found except Chapman and Barnard, and the land which they desired and were willing to purchase was included in the 2,100 acres which Drummond had conveyed to Smith.

The transactions involving the sale of said land to Chapman and Barnard brought about the negotiations which Smith contends led to and brought about the alleged final settlement with Drummond, and which Drummond contends was merely one step in carrying on the ranch and cattle business of Smith and Drummond thereafter in the name of Smith.

In the first days of December, 1932, Drummond was in Tulsa negotiating with Chapman and Barnard or their representatives for the sale of several hundred acres of land then standing in the name of Smith. In order to consummate the deal Drummond called Smith to Tulsa, and also called Joe Westerheide, who apparently had the records of land owned by Drummond and the land being sold to Chapman and Barnard. After negotiations were carried on to the point where deeds were executed, it was for some reason deemed necessary for the parties to go to Oklahoma City to complete the transaction, and about December 5th, the parties did go from Tulsa to Oklahoma City. The transactions were completed in the office of C. B. Stuart, an attorney.

Smith asserts that it was at Tulsa, and on the way to Oklahoma City, and there in the office of C. B. Stuart, that a full, complete, and final settlement was had. C. B. Stuart prepared the deed and bill of sale which Smith contends were executed in consummation of this final settlement.

Drummond denies in toto that there was such a settlement, or that any such matter was discussed.

Drummond, Geo. W. Smith, Joe Westerheide, and C. B. Stuart all testified concerning the alleged settlement. Smith testified positively that there was an agreement and full settlement. Drummond testifies as positively that there was not. C. B. Stuart, who drew the deed and bill of sale, testified that there was nothing said by Smith and Drummond concerning the alleged settlement, and that no explanation whatever was made to him by either Drummond or Smith as to the reason for or purpose of the deed and bill of sale. Westerheide heard no conversation concerning a settlement. He did testify that he heard Drummond tell Smith that he would give a bill of sale, and that he was requested to draw it, but that he suggested that Judge Stuart prepare the bill of sale, which he did. Therefore, neither party is corroborated by the testimony of any witness on the question of settlement.

Smith relies strongly on the deed and bill of sale as corroboration of his claim, and asserts that there was absolutely no partnership or joint business between them thereafter.

Drummond insists that there could have been no such settlement because, according to his books, records, etc., he owed Smith nothing whatever, but that Smith was in fact indebted to him and the partnership in a large sum, and that therefore there could have been no consideration for the deed and bill of sale, and no reason therefor, except as by him claimed that the deed was to convey to Smith other land in lieu of that conveyed the day before to Chapman and Barnard, and that said deed and bill of sale were for the sole purpose of giving Smith a financial rating in order to borrow money, and otherwise carry on the partnership business in his (Smith's) name. A number of witnesses testified in substance to having heard Drummond make the statement after December 6, 1932, that

he had sold out to Smith, and was no longer interested in any way in the ranch and cattle business.

On the other hand, a number of witnesses testified in substance to having heard Geo. W. Smith state, after December 6, 1932, that he and Drummond were still partners. What the facts are can hardly be determined without consideration of all the evidence relative to the so-called partnership transaction.

However, it is perfectly clear that the finding of the court that no partnership had existed between Drummond and Smith is against the clear weight of the evidence.

On October 18, 1932, apparently at the time when negotiations were being carried on for the sale of the land above mentioned to Chapman and Barnard, written agreement was entered into between Alfred A. Drummond and Geo. W. Smith, as follows:

"Mr. George W. Smith,
  "Drummond Ranch
    "Pawhuska, Oklahoma

"or—

"To whom this May concern
  "Reducing this the 18th day of October, 1932, a verbal understanding to writer, this is to state that in the event of my death you are to manage my ranch and all of my land in Osage County, Oklahoma, for a period of five years beginning October 15, 1932, and ending October 15, 1937; but that this management of said ranch and all of my land in addition to said ranch in Osage County, Oklahoma, is to be for the benefit of my wife and daughter Madelaine Drummond, Senior and Junior, and I charge you with getting the most income from all of my lands for this five year period and paying to my wife and daughter, the net income from your operations after deducting the expenses.

"Also you are to have full charge of our partnership cattle and you are to look after these cattle for a period of five years either off the ranch or on the ranch. If on the ranch, these cattle are to be charged a customary expense. If off the ranch, you are to make the best trade possible for the partnership. At the end of five years, you can keep these cattle in partners with my wife, in the event that I am dead, or you can buy these cattle at an agreed price, or you can sell them to a third party for the best price possible and divide the proceeds from the sale with my wife.

"At the end of five years you are to have the refusal of the lease on my ranch for a one, three or five year period, but if my wife and you decide to continue to operate my ranch as you have the first five years, then the second five years, which would be a continuation of the first five years shall be exactly the same as the first five years.

"In the event that you decide to lease the ranch, you are to have the refusal of it, but then you are to pay to Mrs. Drummond, or her heirs, or my estate, an agreed yearly rental at so much per acre per year, whichever is the customary price per acre for that year for grass of this quality and set up.

"In the event that I don't die, or am not divorced from Madelaine Drummond, and then any arrangement between my heirs is null and void and same is to be handled as we agree.

"This agreement shall be signed by George W. Smith for himself and by Alfred A. Drummond and Madelaine R. Drummond for themselves.

"J. A. Sower
"Witness.

"Mamie Whitten
"Witness.

        "(Signed) Alfred A. Drummond
        "(Signed) Madelaine R. Drummond
        "(Signed) George W. Smith."

Thereafter, in 1933, and after the date Smith claims a full settlement, the record shows a written agreement between Drummond and Smith on the one side and J. K. (Jim) Simms on the other, as follows:

"Partnership Agreement.

"This is to reduce to writing a verbal agreement heretofore entered into between J. K. Simms, Oklahoma City, Oklahoma, and George W. Smith, Pawhuska, Oklahoma, and A. A. Drummond, Tulsa, Oklahoma.

"Whereas, the three above parties are to buy 1,500 more or less head of cattle to be grazed on pastures leased by Drummond to Smith in Osage County, Oklahoma. Simms to get Liberty National Bank to carry said cattle and he to carry freight. Smith and Drummond to carry grass.

"Cattle to be sold or marketed in the fall of 1933. Purchase price, freight, interest and grass to be paid then profits or losses to be divided.

"Partnership to be charged $2.50, for grazing yearlings and other grass for older cattle to be agreed upon.

"Witness our hands:
        "J. K. Simms
        "Geo. W. Smith
        "Alfred A. Drummond."

The record contains hundreds of written exhibits consisting of checks, drafts, etc., contracts, notes, mortgages, etc., which clearly bear out Drummond's contention that there was a partnership. The record

overwhelmingly refutes the finding of the court that no partnership had existed.

Other facts disclosed by the record clearly refute the findings of the court with reference to the alleged settlement.

As stated before, Smith claims that he had never been paid any of the profits arising out of their "deals," yet he admits that he acquired title to several hundred acres of land which he claims as his own besides the land conveyed to him by Drummond on December 6, 1932.

November 25, 1930, Geo. W. Smith made in writing a financial statement to the First National Bank of Hominy (C.-M. p. 3570) showing gross assets in his name of the value of $26.112.00, with liabilities of $6,-143.94, or a net worth of $19,968.06. No mention was then made of any money owing to him by Alfred A. Drummond or Drummond and Smith. He then claimed to own 680 acres of land in Osage county.

Again, on February 8, 1932, he made a financial statement to the same bank showing gross assets of $32,232.50 listing the same land in Osage county, with liabilities of $6,417, or a net worth of $25,815. No mention is there made of any money owing him by Drummond or the partnership.

May 2, 1932, he, Smith, made a financial statement to the National Livestock Credit Association (C.-M. 1792-4) showing gross assets valued at $142,367.84, with liabilities of $32,350.35, and net worth of $110,367.84, or an increase in wealth between February 8 and May 2, 1932, a period within the darkest days of the depression, of $84,552.-84. This was after Drummond had conveyed to Smith approximately 1,900 acres of land, some of which was later deeded to Chapman and Barnard, and was a part of the transaction whereby the indebtedness of Drummond, or Drummond and Smith, to the Stockyards Loan Company was liquidated.

It is perfectly plain that Smith did not and could not have acquired all this additional wealth in such a short time. It may be noted that Smith in the latter financial statement listed an indebtedness to A. A. Drummond in the sum of $25,000, as Smith claims, still there is a sudden increase in wealth of nearly $50,000 for which there is no explanation. True, Smith asserts that the additional land had been deeded to him to secure a debt which he claims Drummond owed him, but if this be true, why should Smith give him, Drummond, a note for $25,000?

It is plain from the record as a whole that all this additional property, or practically all of it, was transferred by Drummond to Smith for the purpose of enabling Smith to obtain a loan in order to reduce the indebtedness to the Stockyards Loan Company. Without going further into details as to what the record shows, we deem it sufficient to say that, considering the record as a whole, there was no basis for the settlement as claimed by Smith, and that there was no such settlement. This, we think, is conclusively shown by the record.

It is equally clear that there has been no accounting between Drummond and Smith as to their transactions, such as they were.

Plaintiff in error has filed a motion or request that an auditor be employed and used to assist this court in arriving at an accounting, and offers to advance the money to pay for the services of such auditor, same to be taxed as costs. We do not deem it advisable so to do. That would amount, in effect, to a retrial of disputed questions in this court. An auditor would be of little use unless he could go over in detail thousands of items and exhibits, and explain same from an auditor's standpoint to all the members or each member of this court. This would require too much of the time of this court; when the same may be as effectively done by the trial court and with much less expense.

So far as the judgment in favor of the Stockyards Loan Company against Alfred A. Drummond is concerned, there appears to be no reason why same should not be affirmed. Drummond admits the correctness thereof. Said judgment, so far as it affects defendant Geo. W. Smith, is the subject of a separate appeal, and we express no opinion thereon in this case.

We are not prepared to say that the judgment herein against the claim of plaintiff in error, Lee L. Russell, is clearly against the weight of the evidence, and the judgment is affirmed as to said Lee L. Russell.

As to the defendant in error A. L. Jeffrey, the transaction between A. L. Drummond and Geo. W. Smith, whereby Drummond gave Smith his note for $3,500 and pledged the shares of stock in the National Live Stock Credit Association as collateral, appears to have been a personal transaction between the two, and was apparently independent of any partnership business. Clearly Smith furnished the money; wheth-

er it was his own, or whether he borrowed it from Lucas, or the National Livestock Credit Association, is of little consequence. Anyway Drummond admits that he owed the National Livestock Credit Association for the stock.

It may be that when Geo. W. Smith paid the credit association and obtained the release of the stock, if such be the case, he used partnership funds. If so, this matter can be adjusted in the accounting. The judgment denying relief as against defendant Jeffrey is affirmed.

The trial court apparently gave no consideration whatever to the evidence in so far as defendants J. B. Smith, Wayland Smith, Tom Jeff Smith, and Jim K. Simms are concerned. There is much evidence tending to connect each of these defendants with transactions in which Alfred A. Drummond may be interested, and this evidence should be considered in the accounting.

The judgment in favor of Stockyards Loan Company as against Alfred A. Drummond is affirmed.

The judgment in favor of Geo. W. Smith, J. B. Smith, Wayland Smith, Ed Smith, and Jim K. Simms is reversed and remanded for an accounting and such other proceedings as may be deemed necessary for a complete accounting and determination of the interests of the parties in the land and other property involved.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, CORN, GIBSON, HURST, and DAVISON, JJ., concur. DANNER, J., absent.